## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
ANTONIO P.                    :    Civ. No. 3:21CV00062(SALM)
                              :
v.                            :
                              :
COMMISSIONER OF THE SOCIAL    :
SECURITY ADMINISTRATION¹      :    December 6, 2021
                              :
------------------------------x
```

### RULING ON CROSS MOTIONS

Plaintiff Antonio P. ("plaintiff") brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI"). Plaintiff moves to reverse the Commissioner's decision or, in the alternative, to remand

---

¹ Plaintiff has named Andrew Saul, a former Commissioner of the Social Security Administration, as defendant. Claims seeking judicial review of a final agency decision are filed against the Commissioner in his or her official capacity; as a result, the particular individual currently serving as Commissioner is of no import. See Fed. R. Civ. P. 17(d) ("A public officer who ... is sued in an official capacity may be designated by official title rather than by name[.]"); 42 U.S.C. §405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). Accordingly, the Clerk of the Court is directed to update the docket to name the Commissioner of the Social Security Administration as the defendant. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

1

for further administrative proceedings. [Doc. #16]. Defendant moves for an order affirming the decision of the Commissioner. [Doc. #21].

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #16]** is **DENIED**, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #21]** is **GRANTED.**

## I.   <u>PROCEDURAL HISTORY</u>[2]

Plaintiff filed an application for both Disability Insurance Benefits ("DIB") and SSI on August 7, 2018, alleging disability beginning December 31, 2002. <u>See</u> Certified Transcript of the Administrative Record, Doc. #13, compiled on April 26, 2021, (hereinafter "Tr.") at 214-24. Plaintiff's application was denied initially on September 25, 2018, <u>see</u> Tr. 67-89, and upon reconsideration on October 29, 2018. <u>See</u> Tr. 90-115.

On December 9, 2019, plaintiff amended the alleged onset date of disability to April 11, 2016, and withdrew his application for DIB. <u>See</u> Tr. 238. On December 18, 2019, plaintiff appeared and testified at a hearing before Administrative Law Judge ("ALJ") I. K. Harrington. <u>See</u> <u>generally</u>

_____

[2] In compliance with the Standing Scheduling Order, plaintiff filed a Statement of Material Facts, titled "Plaintiff's Medical Chronology," <u>see</u> Doc. #16-2, to which defendant filed a responsive Statement of Facts, <u>see</u> Doc. #21-2.

Tr. 33-65. Vocational Expert ("VE") Martina Henderson appeared and testified by telephone at the hearing. <u>See</u> Tr. 34, 37, 59-64; <u>see</u> <u>also</u> Tr. 321-23. On January 28, 2020, the ALJ issued an unfavorable decision. <u>See</u> Tr. 12-32. On November 16, 2020, the Appeals Council denied plaintiff's request for review of the ALJ's decision, thereby making the ALJ's January 28, 2020, decision the final decision of the Commissioner. <u>See</u> Tr. 1-5. The case is now ripe for review under 42 U.S.C. §405(g).

## II.  <u>STANDARD OF REVIEW</u>

The review of a Social Security disability determination involves two levels of inquiry. <u>First</u>, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. <u>Second</u>, the Court must decide whether the determination is supported by substantial evidence. <u>See</u> <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. <u>See</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review -- evaluating whether substantial evidence supports the ALJ's

conclusion -- if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F. 2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-

4

61 (2d Cir. 1988) (citing <u>Carroll v. Sec. Health and Human</u> <u>Servs.</u>, 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." <u>Johnston v. Colvin</u>, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012) (quoting <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 507 (2d Cir. 2009)).

### III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

For the Social Security Administration ("SSA") to consider a claimant disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a
continuous period of not less than 12 months." 42 U.S.C.
§423(d)(1)(A). Such impairment or impairments must be "of such
severity that he is not only unable to do his previous work but
cannot, considering his age, education, and work experience,
engage in any other kind of substantial gainful work which
exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20
C.F.R. §404.1520(c) (requiring that an impairment or combination
of impairments "significantly limit[] ... physical or mental
ability to do basic work activities" to be considered "severe"
(alterations added)).

There is a familiar five-step analysis to determine if a
person is disabled. See 20 C.F.R. §404.1520(4). In the Second
Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If he
> is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed
> in Appendix 1 of the regulations. If the claimant has
> such an impairment, the Secretary will consider him
> disabled without considering vocational factors such as
> age, education, and work experience; the Secretary
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful
> activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per
curiam). If and only if the claimant does not have a listed

6

impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). The residual functional capacity ("RFC") is what a person is still capable of doing despite limitations resulting from his physical and mental impairments. See 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or

disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.   THE ALJ'S DECISION

Following the above-described evaluation process, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from April 11, 2016, through" January 28, 2020. Tr. 25.

At step one, the ALJ found that plaintiff "has not engaged in work activity since the amended alleged onset date of disability." Tr. 18. At step two, the ALJ found that plaintiff suffered from the severe impairments of "bipolar disorder, personality disorder, alcohol dependence, and opioid dependence[.]" Id. The ALJ found that a separate determination of whether the plaintiff's drug addiction or alcoholism ("DAA") "is a contributing factor material to the determination of disability" in accordance with SSR 13-2p was not required because "the claimant is found not disabled considering all his impairments including DAA[.]" Id.

The ALJ further found that plaintiff's "hypertension and obesity[]" were non-severe impairments. Id. The ALJ "considered the potential impact of obesity in causing or contributing to co-existing impairments as required by Social Security Ruling 02-01p[,]" and found "no evidence of any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning." Id. The ALJ also found that plaintiff's "schizophrenia disorder is a non-medically determinable impairment." Id. at 19.

At step three, the ALJ determined that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Id. The ALJ specifically discussed Listings 12.04, Depressive, bipolar and related disorders, and 12.08, Personality and impulse-control disorders. See id. at 19-20; 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§12.04, 12.08. As to the "Paragraph B" criteria, the ALJ found that plaintiff "has no limitation[]" in "understanding, remembering or applying information[]" and "has a moderate limitation[]" in "interacting with others," "concentrating, persisting or maintaining pace," and "adapting or managing oneself[.]" Tr. 20. Accordingly, the ALJ found that the Paragraph B criteria were "not satisfied" because plaintiff's

"mental impairments do not cause at least two 'marked'

limitations or one 'extreme' limitation[.]" Tr. 20.

As to the "Paragraph C" criteria, the ALJ "defer[red] to

the opinions of the State agency psychological consultants as

persuasive evidence[]" to find that the Paragraph C criteria

were not met. Id.; see also Tr. 73, 97.

Before moving on to step four, the ALJ found that plaintiff

had the RFC

> to perform a full range of work at all exertional levels
> but with the following nonexertional limitations: The
> claimant can perform simple, routine tasks involving no
> more than simple, short instructions and simple, work-
> related decisions with few workplace changes at self-
> pace with no strict adherence to time or production
> requirements (no quotas). The claimant can have
> occasional interaction with the general public,
> coworkers, and supervisors.

Tr. 20-21.

At step four, the ALJ concluded that the plaintiff "has no

past relevant work[.]" Tr. 24. At step five, considering

plaintiff's "age, education, work experience," and RFC, the ALJ

found that "there are jobs that exist in significant numbers in

the national economy that [plaintiff] can perform[,]" including

industrial cleaner; dishwasher; and hand packager. Id. at 24-25.

## V.   **DISCUSSION**

Plaintiff asserts that the ALJ erred in the following ways:

(1) at step three, by finding that plaintiff has only a moderate

limitation in adapting or managing oneself, alleging that his

10

limitation in this area should have been characterized as severe, see Doc. #16-1 at 6-10; (2) by improperly disregarding the VE's testimony regarding production demand, id. at 10-12; and (3) by failing to address an alleged conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"), as required by SSR 00-4p. See id.

A. Step Three

Plaintiff asserts that the ALJ committed reversible error at step three in evaluating Listing 12.04 because the ALJ found that he has only a "moderate limitation in adapting or managing himself[,]" but plaintiff "actually has an extreme limitation in this area." Doc. #16-1 at 8. Defendant responds that the ALJ's step three finding is supported by substantial evidence. See generally Doc. #21-1 at 4-10.

1. *Applicable Law*

At step three, the ALJ considers the "medical severity of [the claimant's] impairment(s)." 20 C.F.R. §404.1520(a)(4)(iii). If the ALJ finds that the claimant has "an impairment(s) that meets or equals one of [the] listings in appendix 1 of this subpart and meets the duration requirement[,]" the claimant is disabled. Id. Plaintiff "bears the burden of proof" to establish disability at step three. Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).

To "meet or equal" the criteria of Listing 12.04, the
claimant's "mental disorder must satisfy the requirements of
both paragraphs A and B, or the requirements of both paragraphs
A and C." 20 C.F.R. Pt. 404, App. 1 §12.00(A)(2).[3]

To satisfy the Paragraph B criteria, the claimant must have
an "[e]xtreme limitation of one, or marked limitation of two, of
the following areas of mental functioning: 1. Understand,
remember, or apply information[;] 2. Interact with others[;] 3.
Concentrate, persist, or maintain pace[;] 4. Adapt or manage
oneself." Id. at §12.04(B) (citations omitted).

The Listings define the ability to "adapt or manage
oneself" as "the abilities to regulate emotions, control
behavior, and maintain well-being in a work setting." Id. at
§12.00(E)(4). A moderate limitation means the claimant's
"functioning in this area independently, appropriately,
effectively, and on a sustained basis is fair." Id. at
§12.00(F)(2)(c). An extreme limitation means the claimant is
"not able to function in this area independently, appropriately,
effectively, and on a sustained basis." Id. at §12.00(F)(2)(e).
When assessing the degree of limitation a claimant has, the SSA
considers, among other factors, "whether [the claimant] could

---

[3] Because plaintiff does not raise any argument with respect to
the Paragraph C criteria, the Court addresses only the Paragraph
B criteria at step three.

function without extra help, structure, or supervision[.]" Id.
at §12.00(F)(1). The Listings further explain how the "[e]ffects
of support, supervision, [and] structure on functioning" will be
evaluated, as follows:

> The degree of limitation of an area of mental functioning
> also reflects the kind and extent of supports or
> supervision you receive and the characteristics of any
> structured setting where you spend your time, which
> enable you to function. The more extensive the support
> you need from others or the more structured the setting
> you need in order to function, the more limited we will
> find you to be.

Id. at §12.00(F)(3)(e) (citation omitted).

      2.   *Analysis*

The ALJ found that plaintiff did not satisfy the Paragraph
B criteria because he did not have an extreme limitation in any
of the four Paragraph B areas. See Tr. 20. Plaintiff argues that
he has an extreme limitation in the area of adapting or managing
himself. See Doc. #16-1 at 8.

The ALJ found that plaintiff had a moderate limitation in
adapting or managing himself. See Tr. 20. The ALJ's decision
provides minimal explanation for the conclusion that plaintiff
has a moderate limitation in adapting or managing himself. In
support of this finding, the ALJ cited only (1) plaintiff's
"clean-shaven and kempt[]" appearance and (2) that plaintiff
needed "visiting nurse services for medication management ...
due to poor judgment." Id. A more robust explanation would have

13

been helpful. However, "an ALJ's unexplained conclusion at step three of the analysis may be upheld where other portions of the decision and other clearly credible evidence demonstrate that the conclusion is supported by substantial evidence." Eric G. v. Comm'r of Soc. Sec., No. 19CV01328(FPG), 2021 WL 972503, at *2 (W.D.N.Y. Mar. 16, 2021) (citation and quotation marks omitted); see also Ryan v. Astrue, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014). The Court therefore turns to the question of whether the ALJ's finding that plaintiff has only a moderate limitation in adapting and managing himself is supported by substantial evidence.

The single most significant piece of evidence regarding plaintiff's functional abilities is the opinion of his treating provider. See Darden v. Saul, No. 3:19CV00891(SRU), 2020 WL 6293023, at *11 (D. Conn. Oct. 26, 2020) ("[O]pinions from treating providers are particularly instructive in assessing the residual functional capacity of a claimant with mental impairments."). Plaintiff's treating provider, Ellen Villasenor, APRN, BC, completed a medical source statement dated September 24, 2018. See Tr. 394-98. She considered plaintiff's functional abilities in multiple areas using a scale of one to seven, with a rating of one meaning "Always a problem, or No ability[,]" a four meaning "Average ability/functioning in this area[,]" and a seven meaning "Excellent ability, Never a problem[.]" Tr. 396-

97. Contrary to plaintiff's claim that he suffers from "extreme" limitations, APRN Villasenor did not rate plaintiff a "one" <u>in any category</u>. <u>See</u> <u>id.</u>

Of particular significance here, APRN Villasenor rated plaintiff a four, indicating average ability, in the areas of "[t]aking care of personal hygiene" and "[c]aring for personal needs[.]" Tr. 396. She rated plaintiff a three, indicating "[s]ometimes a problem, or [r]educed ability[,]" in areas such as "[u]sing good judgment regarding safety and dangerous circumstances[,]" "[u]sing appropriate coping skills[,]" and "[a]sking questions or requesting assistance[.]" Tr. 396-97. Thus, the treating provider's own assessment provides ample support for the ALJ's finding that plaintiff was not <u>extremely</u> limited in any area.

Plaintiff nonetheless asserts that, because he "is unable to function outside of a vast amount of support[,]" the ALJ should have found that he has an <u>extreme</u> limitation in adapting or managing himself. Doc. #16-1 at 9. In support of this argument plaintiff states that: (1) "[h]is elderly father cooks his meals[;]" (2) his father "drives him to his program daily ... because [he] is unable to manage himself, [so] his father has to supervise even a short trip[;]" (3) "because [he] cannot manage, his father does not trust him with the 'responsibility to do all the grocery shopping[;]'" and (4) he "cannot manage to

administer his own medication." Id. These claims of limitations
are not fully supported by the record.

First, the record shows that plaintiff cooked meals for
himself and his family. See Tr. 341 (Plaintiff stated at a
February 21, 2018, medical assessment that "he showers his
mother regularly and cooks for his father[.]"); Tr. 357
(Plaintiff stated at a May 10, 2018, medical assessment that
because his mother was dealing with health issues, "he and his
father still do the cooking."); see also Tr. 700 (Plaintiff
advised social worker on March 10, 2016, that he was "[f]ocused
on returning home and 'cooking for Easter.'").

Second, the record reflects that plaintiff drove places on
his own. See Tr. 50 (Plaintiff testified that he "[s]ometimes[]"
drives himself.); Tr. 268 (Function Report dated August 28,
2018, indicating that plaintiff can go out alone, and can drive
a car); Tr. 357 (July 6, 2018, behavioral health note indicating
that plaintiff's "sister bought him a car" in June 2018).

Third, the record reflects that plaintiff did at least some
of the family grocery shopping. See Tr. 268 (Function Report
dated August 28, 2018, indicating plaintiff shops for
"[g]roceries for the family ... once a week" for an hour and a
half).

Finally, even though plaintiff has a visiting nurse to
assist in administering his medication, plaintiff acknowledges

16

that he takes his pills on his own when the visiting nurse "leaves them set aside for" him for the days she is not there. Tr. 44.

"This court ... will not evaluate which position has more support in the record, nor inquire whether substantial evidence supports the plaintiff's claims. The court's inquiry is limited to whether there is substantial evidence in support of the Commissioner's decision[.]" McCarthy v. Colvin, No. 3:16CV01716(JGM), 2018 WL 495678, at *10 (D. Conn. Jan. 22, 2018) (emphasis added). The Court has examined the record, including the functional assessment provided by plaintiff's treating provider, and finds that there is substantial evidence to support the ALJ's finding. Accordingly, the ALJ did not err at step three.

B. Step Five

Plaintiff appears to assert two separate arguments related to the ALJ's step five determination. First, plaintiff asserts that there is an unresolved conflict between VE Henderson's testimony and the DOT. Specifically, plaintiff contends that VE Henderson "actually testified that although these are 'non-production pace' jobs ... the worker still has a set number goal for each day." Doc. #16-1 at 11. Defendant responds that no conflict exits because "the DOT is silent as to pace and production quotas." Doc. #21-1 at 11. Second, plaintiff contends

that the ALJ improperly "disregarded the vocational testimony that all jobs have some production demand[.]" Doc. #16-1 at 11. Defendant responds that "substantial evidence supports the ALJ's step-five finding that there is other work in the national economy Plaintiff can perform." Doc. #21-1 at 12.

      1.   *Applicable Law*

At step five, the ALJ considers a claimant's RFC and his "age, education, and work experience to see if [claimant] can make an adjustment to other work." 20 C.F.R. §416.920(a)(4)(v). "At step five the burden shifts to the Commissioner to show there is other gainful work in the national economy which the claimant could perform." Poole v. Saul, 462 F. Supp. 3d 137, 162 (D. Conn. 2020) (citation and quotation marks omitted). The "ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014).

      2.   *VE Henderson Testimony*

VE Henderson testified at the administrative hearing by telephone. See Tr. 34-36, 59-64. VE Henderson's qualifications were established, and plaintiff's counsel did not object to her being qualified as a Vocational Expert. See Tr. 59. The ALJ presented VE Henderson with a hypothetical assuming an "individual of the claimant's age, education and past work experience." Tr. 60. The ALJ's hypothetical tracked the

limitations contained in the ultimate RFC determination,

instructing the VE to

> assume such individual is capable of the full range of
> exertional work involving simple, routine tasks,
> involving no more than simple, short instructions and
> simple work-related decisions with few workplace
> changes, at self-pace with no strict adherence to time
> or production requirements, meaning no quotas.
> Occasional interaction with the general public,
> coworkers or supervisors.

Tr. 60-61. VE Henderson testified that such an individual could

perform the following jobs: (1) industrial cleaner, DOT code

381.687-018, with approximately 2,156,000 jobs nationally; (2)

dishwasher, DOT code 318.687-010, with approximately 506,000

jobs nationally; and (3) hand packager, DOT code 920.587-018,

with approximately 654,000 jobs nationally. See Tr. 61.

Following this testimony, the ALJ and VE Henderson engaged in

the following colloquy:

> Q: Okay. Is your testimony consistent with the DOT and
> companion SCO?
>
> A: Yes, Your Honor.
>
> Q: Okay. So the DOT and SCO, does it make any
> specifications regarding public interaction with the
> general public, coworkers or supervisors, or does it --
> also does it address any adherence, self-pace or
> adherence to time or production requirements regarding
> quotas?
>
> A: No, Your Honor.
>
> Q: And --
>
> A: That comes from my education, experience and
> research.

Tr. 61. Plaintiff's counsel then examined VE Henderson:

> Q: And then, what about -- and then I understand that none of these are production-pace kind of jobs, there's no quotas. But, if a job -- if a worker in these jobs is working at, say, ten or 15% slower than the average worker, and he's trying to remain on task, he's at the job, but he is much slower, what do employers do with that?
>
> A: These -- the jobs that I provided are not production-pace jobs.
>
> Q: Right.
>
> A: So everything -- all production is counted at the end of the day.
>
> Q: Okay. And so, like if he's -- let's say he's, you know, washing dishes, and at the end of the day everyone else has washed, you know, a 1,000 dishes, and he has washed 800 dishes. How does that -- what happens with that?
>
> A: If he -- if the claimant is unable to complete his task for the workday, he's not able to work.

Tr. 63.

> 3.  *Analysis – Alleged Conflict with the DOT*

Plaintiff's first claim of reversible error at step five is that the ALJ failed to address a conflict between the VE's testimony that the jobs she provided were non-production pace jobs, <u>see</u> Tr. 63, and the DOT, as required by SSR 00-4p. <u>See</u> Doc. #16-1 at 12. Defendant responds that there can be no conflict because the DOT is silent with respect to the "number of dishes an individual is expected to wash[]" and "as to pace and production quotas." Doc. #21-1 at 11.

The SSA primarily relies "on the [DOT] ... for information about the requirements of work in the national economy[,]" but "may also use VEs ... to resolve complex vocational issues." SSR 00-4p, 2000 WL 1898704, at *2 (SSA Dec. 4, 2000) (footnote omitted).

> [E]vidence provided by a VE ... generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE ... evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE ... [for] evidence to support a determination or decision about whether the claimant is disabled.

Id. Where, however, the DOT is "silent on an issue, no actual conflict exists between the VE testimony and the DOT." Diaz v. Saul, No. 3:19CV00272(WIG), 2019 WL 5587024, at *3 (D. Conn. Oct. 30, 2019) (citation and quotation marks omitted)); see also Reisinger v. Comm'r of Soc. Sec., No. 16CV00428(ATB), 2017 WL 2198965, at *10 (N.D.N.Y. May 18, 2017) (collecting authorities).

Plaintiff's theory as to the conflict between the VE's testimony and the DOT is unclear. The only claim made in plaintiff's briefing actually regards an alleged conflict within the VE's testimony. Plaintiff argues: "The vocational expert (VE) actually testified that although these are 'non-production pace' jobs which means that '... all production is counted at the end of the day [as opposed to a moving count such as a

21

conveyer belt].' (Tr. 63), the worker still has a set number goal for each day." Doc. #16-1 at 11 (sic). No actual conflict with any actual provision of the DOT is alleged by plaintiff. Plaintiff contends that VE Henderson's testimony that the claimant is unable to work if he cannot complete the tasks of the job amounted to a conclusion "that all jobs have some production demand[.]" Doc. #16-1 at 11. However, the DOT is silent as to production pace. VE Henderson explicitly testified that "the jobs that [she] provided are not production-pace jobs." Tr. 63. Further, VE Henderson based her findings on a hypothetical job in which there could be "no quotas." Tr. 61. No true conflict with the DOT is alleged, and because the DOT is silent, none can be found. Accordingly, plaintiff has failed to establish an unaddressed conflict with the DOT that would create error at step five.

      4.   *Analysis – VE's Production-Pace Testimony*

Plaintiff's second claim of reversible error at step five is that "the ALJ disregarded the vocational testimony that all jobs have some production demand[.]" Doc. #16-1 at 11. Defendant responds that the ALJ's step five finding was "supported by substantial evidence" because the "ALJ RFC and the hypothetical presented to the vocational expert included a limitation to work at self-pace with no strict adherence to time production requirements (no quotas)." Doc. #21-1 at 10 (citation omitted).

VE Henderson testified that "if the claimant is unable to complete his task for the workday, he's not able to work." Tr. 63. Plaintiff contends this was tantamount to a declaration that if plaintiff were unable to meet a production quota, he would be precluded from all work. In other words, plaintiff equates VE Henderson's statement that a worker must "complete his task" to a quota. The Court disagrees.

Common sense dictates that all jobs will require that certain duties be performed; if an employee does not perform his duties, he cannot keep the job. The requirement that the basic duties of a job be performed is <u>not</u>, however, the equivalent of a production quota. VE Henderson testified that "the jobs that [she] provided are not production-pace jobs." <u>Id.</u> Plaintiff would be required to perform the duties of the jobs identified by the VE, and the VE testified that plaintiff, with the limitations presented, could do so.

The Court notes that the task completion testimony was given in response to a question from plaintiff's counsel regarding the production demands of the job of dishwasher. <u>See</u> <u>id.</u> No reference was made to the other jobs identified. Even if the dishwasher job were eliminated from consideration, the jobs of industrial cleaner and hand packager would still be available. "To meet her burden at step five, the Commissioner need show only one job existing in the national economy that

claimant can perform." Esposito v. Colvin, No. 3:14CV01302(WIG),
2015 WL 13721245, at *3 (D. Conn. Nov. 23, 2015), report and
recommendation adopted, No. 3:14CV01302(VAB), 2017 WL 1196640
(D. Conn. Mar. 30, 2017) (citation and quotation marks omitted).

"Neither the Social Security Act, nor the Commissioner's
Regulations or Rulings provide a definition for a 'significant'
number of jobs." Koutrakos v. Colvin, No. 3:13CV01290(JGM), 2015
WL 1190100, at *21 (D. Conn. Mar. 16, 2015) (collecting cases).
While there is no bright-line rule, "courts have generally held
that what constitutes a 'significant' number is fairly minimal,
and numbers" in the range of 10,000 jobs nationally "have
typically been found to be sufficiently 'significant' to meet
the Commissioner's burden." Sanchez v. Berryhill, 336 F. Supp.
3d 174, 177 (W.D.N.Y. 2018) (citations and quotation marks
omitted); see also Debiase v. Saul, No. 3:19CV00068(RMS), 2019
WL 5485269, at *10 (D. Conn. Oct. 25, 2019) ("[C]ourts are
generally guided by numbers that have been found 'significant'
in other cases, and courts within the Second Circuit have
generally found that what constitutes a 'significant' number of
jobs is fairly minimal." (citations and quotation marks
omitted)).

VE Henderson testified that there are 2,156,000 industrial
cleaner jobs and 654,000 hand packager jobs in the national
economy that plaintiff could perform. These numbers are well

above numbers that have been found to be significant. Accordingly, the ALJ's decision at step five is supported by substantial evidence.

## VI. <u>CONCLUSION</u>

For the reasons set forth herein, plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #16]** is **DENIED,** and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #21]** is **GRANTED.**

SO ORDERED at New Haven, Connecticut, this 6th day of December, 2021.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE